## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 0175

STEVE BURTNER

VERSUS

MARGARET BURTNER

Judgment rendered: OCT 0 1 2019

* * * * *

Appealed from the Twenty-First Judicial District Court
In and for the Parish of Livingston
State of Louisiana
No. 146161, Div. "J"

The Honorable Jeffrey C. Cashe, Judge Presiding

* * * * *

Colt J. Fore                                    Attorneys for Plaintiff/Appellee
D. Blayne Honeycutt                             Steve Burtner
Denham Springs, Louisiana


J. Andrew Murrell                               Attorney for Defendant/Appellant
Baton Rouge, Louisiana                          Margaret Burtner


* * * * *


BEFORE: McCLENDON, WELCH, AND HOLDRIDGE, JJ.

McClendon, J. concurs in the result reached by the majority.

**HOLDRIDGE, J.**

This is an appeal from a declaratory judgment, wherein the trial court determined that a pre-marital contract was valid and enforceable. For the following reasons, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

Steve Burtner and Margaret Burtner were married on October 12, 2002. On October 9, 2002, the parties entered into an agreement titled "Marriage Contract," which was signed by both parties before a notary public and two witnesses. The pre-martial contract provided the following:

I.
The [parties] shall be separate in property and do hereby renounce the legal regime established by the Louisiana Civil Code which establishes a community of acquets and gains.

II.
All property and effects of the [parties], whether owned by him or her at the time of the celebration of said intended marriage, or acquired during said marriage, are hereby declared to be separate property, and they and each of them do hereby expressly reserve to themselves individually the entire administration of their respective particular movable and immovable property, and the respective free enjoyment of each of their revenues.

III.
The parties hereto waive any rights that they may have to the property of the other on the dissolution of the marriage by death or otherwise, with the exception of any dispositions that either party may make evidencing an express donative intent including transfers by last will and testament.

IV.
The parties acknowledge that they have freely and voluntarily entered into this agreement, that both parties understand that they are renouncing the community property laws of the State of Louisiana, that both parties have received their own legal counsel outside the presence of each other, and that they wish to proceed with the execution of this Marriage Contract.

Steve filed a petition for divorce on August 25, 2014. The trial court granted the parties a divorce on November 4, 2015. On March 6, 2018, Margaret filed a petition for declaratory judgment, seeking a judgment declaring the parties' pre-

2

martial contract invalid due to fraud, duress, and/or misrepresentation. Margaret attached a copy of the parties' pre-martial contract to her petition. In her petition, Margaret alleged the following, in pertinent part:

3.
On Wednesday, October 9, 2002, Steven [sic] told Margaret he was taking her to a lawyer's office to execute a prenuptial agreement and that if she did not sign, he would not marry her and she, and her minor child, would have to move out of his home.

4.
On Wednesday, October 9, 2002, while under fraud, duress, and/or misrepresentation, Margaret entered into a Matrimonial Agreement with Steven [sic] whereby renouncing the legal regime of the community of acquets and gains. A copy of the purported Matrimonial Agreement [was] attached hereto as Exhibit I.

5.
Margaret was under duress when she was told she would be forced to move out if she did not execute the Matrimonial Agreement prior to the marriage. In addition, Margaret was involved, and Steven [sic] was aware, in a contentious custody battle and living with an unrelated houseguest of a romantic nature would have been detrimental to her custody battle.

6.
At no point in time was Margaret provided a copy of the proposed agreement prior to the date of execution. In fact, she only saw the proposed Matrimonial Agreement when she arrived at the lawyer's office on the date of execution.

7.
At no point in time was Margaret permitted sufficient time to have independent counsel review the agreement. In fact, Steven [sic] was aware that Margaret's attorney was out of town that week.

Steve filed an answer to Margaret's petition, denying the majority of the allegations. On April 17, 2018, Steve filed a reconventional demand, arguing that the parties' pre-martial contract was valid and enforceable. Steve attached a copy of the parties' pre-marital contract to his reconventional demand. In his reconventional demand, Steve stated the following, in pertinent part:

5.
The Marriage Contract was executed by [the parties] ... in front of Attorney Steven Covell who [was] also a Notary and two witnesses ... on October 9, 2002, therefore the document [was] an authentic act in proper form[.]

3

The parties [were] bound by the valid contract and the contract's application to the case is a matter of law. Margaret ... was fully aware of and read the contract prior to signing the same[.]

7.

Margaret ... knew the purpose of and was given a copy of the Marriage Contract more than two weeks prior to the date of execution[.]

On August 8, 2018, the trial court held a hearing on Margaret's petition for declaratory judgment.[1] Several witnesses testified at the hearing, including the parties' themselves and the attorney who drafted the parties' pre-marital contract, Stephen Covell. Mr. Covell testified that he was present when the pre-marital agreement was executed in his office in front of the parties and two witnesses. Mr. Covell testified that all parties and witnesses were present in his office at the time the pre-marital contract was executed. Mr. Covell further testified that his office recommended that Margaret seek the advice of independent counsel regarding the parties' pre-marital contract, but she declined. When Steve's counsel submitted the copy of the parties' pre-marital contract into evidence at the hearing, Margaret's counsel objected to its admission, stating that it had not been authenticated. The trial court allowed the copy of the pre-martial contract to be submitted into evidence, noting that it was attached to Margaret's petition as an exhibit.

In support of her argument, Margaret provided testimony that she allegedly signed the pre-marital contract under duress. According to Margaret, she did not receive a copy of the pre-marital contract before signing it on October 9, 2002, three days prior to their wedding. Margaret testified that she did not have an opportunity to seek counsel because her attorney was out of town. She further testified that she was never left alone to review the pre-marital contract during its

---

[1] A petition for a declaratory judgment is an ordinary proceeding, not a summary proceeding. La. C.C.P. arts. 1879 and 2592. In this case, the parties tried the matter by summary proceeding. Since no party objected, this judgment is a final judgment, and the parties have waived their right to object. See Boyd v. Boyd, 499 So.2d 164, 165 (La. App. 2 Cir. 1986).

4

execution. Margaret stated that she did not recall Mr. Covell advising her to seek independent counsel at the time the parties executed their pre-marital contract.

Steve countered Margaret's testimony, testifying that he obtained the parties' pre-marital contract from Mr. Covell's office on October 8, 2002, the day before the contract's execution, and gave it to Margaret to review. Steve corroborated Mr. Covell's testimony, stating that Mr. Covell suggested to Margaret that she seek independent counsel and she replied, "I don't need to, it's no big deal." According to Steve, Margaret "knew way in advance that there was going to be a [pre-marital contract] ... she knew about [it] for months[.]"

After considering the testimony from multiple witnesses and the evidence submitted by the parties, the trial court made an oral ruling finding that the facts of this case did not support a finding of duress and that the parties' pre-martial contract was valid and enforceable. The trial court signed a judgment on September, 19, 2018 in accordance with its oral ruling. Subsequently, Margaret devolutively appealed the trial court's judgment. The trial court signed an order on October 29, 2018, granting Margaret a devolutive appeal.

On March 27, 2019, Steve filed a motion to supplement the record, stating that "[t]he original Marriage Contract was not located until March 19, 2019." Therefore, Steve requested that the trial court allow the parties' original pre-marital contract to be supplemented into the record. On May 8, 2019, the trial court granted Steve's motion to supplement the record.[2]

---

[2] Although the trial court had the authority to supplement the record on appeal, normally this court cannot review documents or rulings pertaining to matters that occurred after the appeal was granted. Thibodeaux v. Rental Ins. Services, Inc., 2013-1947 (La. App. 1 Cir. 4/24/15), 2015 WL 1882456, at *6, writ denied, 2015-1213 (La. 9/25/15), 178 So.3d 567. However, in this case, Margaret attached as an exhibit to her petition a copy of the pre-marital contract, which is a copy of the original, and which has now been supplemented into the record by order of the trial court.

5

## APPLICABLE LAW

A court's determination about whether to issue a declaratory judgment is subject to the abuse of discretion standard; however, the judgment itself is still subject to the appropriate standard of review-questions of law are reviewed *de novo* and questions of fact are subject to the manifest error/clearly wrong standard of review. Robert v. Robert, 2015-0313 (La. App. 1 Cir. 2/25/16), 2016 WL 763881, at *1 (unpublished).

A trial court's factual findings and credibility determinations may not be set aside unless it is manifestly erroneous or clearly wrong. Berthelot v. Berthelot, 2017-1055 (La. App. 1 Cir. 7/18/18), 254 So.3d 800, 806; McDaniel v. McDaniel, 35,833 (La. App. 2 Cir. 4/03/02), 813 So.2d 1232, 1235. Moreover, an appellate court should not disturb reasonable factual findings when there is conflict in the testimony. Charles v. Price, 52,688 (La. App. 2 Cir. 5/22/19), 273 So.3d 567, 572. Where there is conflict in the testimony about factual matters, reasonable evaluations of credibility and reasonable inferences of fact, the determination of the trial court should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Berthelot, 254 So.3d at 806-07.

## DISCUSSION

### Validity of the Pre-Marital Contract

In her first two assignments of error, Margaret argues that the trial court erred in allowing the introduction of a copy of the parties' pre-martial contract at the hearing because it was not in authentic form. Specifically, Margaret argues that the copy of the pre-martial contract was not admissible into evidence under La. C.E. art. 1004 because Steve failed to timely produce the original pre-marital

contract, and the two witnesses who signed the pre-martial contract did not offer testimony at the hearing acknowledging their signatures.[3]

As the party attacking the validity of the copy of the pre-martial contract, Margaret bears the burden of providing evidence to invalidate it. *See* Estate of Riggs v. Way-Jo, L.L.C., 2011-1651 (La. App. 1 Cir. 12/28/12), writs denied, 2013-0239, 2013-0246, 2013-0253 (La. 4/1/13), 110 So.3d 5837. We must determine whether the evidence presented by Margaret constitutes strong and convincing proof that the copy of the parties' pre-martial contract was not authentic. The record reveals that neither party contested the validity of their signatures on the copy of the pre-marital contract. The record further reveals that both parties offered into evidence a copy of the parties' pre-marital contract to support their position and the original contract has been supplemented into the record. If both parties offer identical copies of documents, indicating that there is agreement between them as to their authenticity, the court may accept them. *See* Boland v. West Feliciana Parish Police Jury, 2003-1297 (La. App. 1 Cir. 6/25/04), 878 So.2d 808, 814, writ denied, 2004-2286 (La. 11/24/04), 888 So.2d 231. Because both parties submitted a copy of the pre-marital contract into evidence, and the trial court allowed the record to be supplemented with the original, we find

---

[3] Louisiana Code of Evidence article 1004 provides:

> The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:
>
> **(1) Originals lost or destroyed.** All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith;
> **(2) Original not obtainable.** No original can be obtained by any available judicial process or procedure;
> **(3) Original in possession of opponent.** At a time when an original was under the control of the party against whom offered, he was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and he does not produce the original at the hearing;
> **(4) Collateral matters.** The writing, recording, or photograph is not closely related to a controlling issue; or
> **(5) Impracticality of producing original.** The original, because of its location, permanent fixture, or otherwise, cannot as a practical matter be produced in court; or the cost or other consideration to be incurred in securing the original is prohibitive and it appears that a copy will serve the evidentiary purpose.

no error by the trial court in allowing the supplementation. *See* Id. Therefore, Margaret's assignments of error as to the pre-marital contract's authenticity is without merit.

## Consent to the Pre-Marital Contract

In her remaining assignments of error, Margaret argues that her consent to the pre-marital contract was vitiated by fraud, duress, and/or misrepresentation. Therefore, Margaret argues that the pre-marital contract should be rescinded. Margaret argues that the trial court erred in determining that the pre-marital contract was valid and enforceable because Steve committed fraud and duress when he failed to present a copy of the pre-marital contract to Margaret for review prior to its execution. Specifically, Margaret argues that the trial court erred in determining that duress was not present when Steve told her three days before their wedding that she had to execute the pre-marital contract or their wedding would be called off. According to Margaret, she was not permitted sufficient time to have independent counsel review the pre-marital contract. Margaret further argues that she was under duress when signing the pre-marital contract due to her living situation at that time and her ongoing custody dispute for her minor child with her previous husband. Margaret alleges that she was forced to sign the pre-marital contract because it was "detrimental to her custody battle" for her minor child.

A contract is formed by the consent of the parties. La. C.C. art. 1927; Perot v. Perot, 46,431 (La. App. 2 Cir. 8/10/11), 71 So.3d 1123, 1125, writ denied, 2011-2263 (La. 11/23/11), 76 So.3d 435. A contract has the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. La. C.C. art. 1983. Consent may be vitiated by error, fraud, or duress. La. C.C. art. 1948. Consent is vitiated when it has been obtained by duress of such a nature as to cause a reasonable fear of unjust and considerable injury to a party's person, property, or reputation. La. C.C. art. 1959. Age, health,

8

disposition, and other personal circumstances of a party must be taken into account in determining reasonableness of the fear. La. C.C. art. 1959. Thus, under article 1959, duress is determined by using a subjective as well as objective standard. *See* Averette v. Industrial Concepts, Inc., 95-1286 (La. App. 1 Cir. 4/30/96), 673 So.2d 642, 644, writ denied, 96-1510 (La. 9/20/96), 679 So.2d 442. A person's personal reaction to circumstances is the subjective element, while the reasonableness of the fear and the unjustness of the injury based on how reasonable persons would react to the circumstances make up the objective element. *See* Id.

The testimony of the parties revealed that the parties signed the pre-marital contract three days before their wedding. While the record contains conflicting testimony on when Margaret received a copy of the pre-marital contract to review, the testimony and the evidence establishes that the pre-marital contract was properly executed before a notary public and two witnesses. The record further contains conflicting testimony as to whether Margaret was advised or given an opportunity to seek independent counsel before signing the pre-marital contract. Steve corroborated Mr. Covell's testimony that Margaret was advised to seek independent counsel before signing the pre-marital contract, but declined, while Margaret testified that she was not advised to seek independent counsel.[4] After hearing the conflicting testimony and evidence presented, the trial court concluded that the pre-marital contract was valid and enforceable.

After reviewing the record, we find that the trial court's factual findings in this case are based largely on credibility determinations. We have determined that the trial court correctly found that Margaret failed to prove her claim for fraud, duress, and/or misrepresentation to rescind the parties' pre-marital contract. The trial court heard the testimony from all of the parties and witnesses and found the

---

[4] A person signing a written contract is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that no person explained it to him, or that he did not understand it. Dulin v. Levis Mitsubishi, Inc., 2001-2457 (La. App. 1 Cir. 12/20/02), 836 So.2d 340, 345, writ denied, 2003-0218 (La. 3/28/03), 840 So.2d 576.

9

testimony of Steve and Mr. Covell more credible than Margaret's. *See* Patterson v. Patterson, 51,929 (La. App. 2 Cir. 5/23/18), 247 So.3d 1148, 1157-58. The trial court is in the best position to weigh the credibility of the witnesses, and we will not disturb that credibility call. *See* Charles, 273 So.3d at 572. Although Margaret alleged that her consent in signing the pre-marital contract was vitiated because of duress, the record unequivocally established that there was no error in the cause of the contract and the alleged duress was not of the type sufficient to vitiate her consent. Therefore, we find that Margaret's claim of duress as to the timeliness of receiving the pre-marital contract and not having the ability to obtain independent counsel have no merit.

Additionally, we find that Margaret's allegation that she was under duress when executing the pre-marital contract due to her "living situation" and pending custody dispute irrelevant. Taking into account Margaret's personal circumstances at the time, in assessing the fear she might have been under, we find that the trial court did not err in failing to find duress sufficient to vitiate her consent to the pre-marital contract. *See* Autin v. Autin, 617 So.2d 229, 234 (La. App. 5 Cir. 1993), writ denied, 620 So.2d 846 (La. 1993). Therefore, we do not find any error with the trial court's finding that Margaret's claim of duress due to her personal circumstances was not associated with Steve.

Lastly, we address Margaret's allegation that she was under duress when signing the pre-marital contract because of Steve's position that he would not marry her unless she signed the pre-marital contract. We find that the trial court was not manifestly erroneous in finding that Steve's position does not rise to the level of duress-inducing threats sufficient to vitiate her consent. *See* La. C.C. art. 1959. A threat of doing a lawful act or a threat of exercising a right does not constitute duress. La. C.C. art. 1962; Perque Carpet & Drapery, Ltd. v. Boudreaux, 2010-620 (La. App. 5 Cir. 6/14/11), 70 So.3d 930, 936. Thus,

10

Margaret's assertion that she agreed to sign the pre-marital contract because Steve would not otherwise marry her does not amount to duress. *See* Vogt v. Vogt, 2002-0066 (La. App. 5 Cir. 10/29/02), 831 So.2d 428, 433, writ denied, 2002-2894 (La. 2/14/03), 836 So.2d 120 (wherein the trial court found that the defendant agreeing to the pre-marital contract because the plaintiff would not marry him otherwise to not be a cause of duress due to the contract being mutually beneficially to both parties since they desired to marry.)

Accordingly, we agree with the trial court that Margaret failed to establish that she signed the pre-marital contract under fraud, duress, and/or misrepresentation to vitiate her consent to the pre-marital contract. Lacking any evidence that the consent of either party was vitiated by fraud, duress, and/or misrepresentation, we find no error in the trial court's recognition of the validity of the parties' pre-marital contract. *See* La. C.C. art. 1948. Margaret's remaining assignments of error have no merit.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's September 19, 2018 judgment in favor of Steve Burtner and against Margaret Burtner. All costs of this appeal are assessed to Margaret Burtner.

**AFFIRMED.**